# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN CREDICO, | : | Civil No. 3:18-cv-465 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN, FCI-ALLENWOOD MEDIUM, | : | |
| Respondent | : | |

## **MEMORANDUM**

Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Justin Credico ("Credico"), an inmate who, at all relevant times, was confined at the Allenwood Federal Correctional Institution ("FCI-Allenwood"), in White Deer, Pennsylvania.[1] (Doc. 1). In the habeas petition, Credico challenges his placement in the Special Housing Unit ("SHU") pending a Special Investigative Supervisor ("SIS") investigation. (*Id.*). Credico seeks transfer to a Residential Re-Entry Center ("RRC") to serve the remainder of his prison sentence in accordance with an incentive provision in the Second Chance Act of 2007.[2] Additionally, Credico claims that his underlying criminal

---

[1] Credico is currently confined at the Federal Correctional Institution, Berlin, New Hampshire. (*See* Doc. 28).

[2] On April 9, 2008, the Second Chance Act of 2007, Pub.L. No. 110-199, Title II, § 251, 122 Stat. 657, 697 ("Second Chance Act"), codified at 18 U.S.C. §§ 3621, 3624, went into effect. The Act contains provisions designed to aid prisoners in their return to society outside of prison and increases the duration of pre-release placement in a RRC from six (6) to twelve (12) months. 18 U.S.C. § 3624(c)(1), (c)(6)(C).

judgment did not order him to work for the Bureau of Prisons ("BOP") and, thus, his placement in a RRC should not be denied based on his refusal to work. (Doc. 4). For relief, Credico seeks declaratory and injunctive relief, release from the SHU, prohibition against retaliation, and the freedom to create source code text. (Doc. 1, pp. 19-20). The petition is ripe for disposition and, for the reasons that follow, will be dismissed.

I. **Background**

   A. **Factual Background**

On May 22, 2017, the United States District Court for the Eastern District of Pennsylvania sentenced Credico to a 70 month term of imprisonment and three (3) years of supervised release for threatening a law enforcement officer, and threatening a family member of a law enforcement officer, in violation of 18 U.S.C. § 115(A)(1)(B) and 18 U.S.C. § 115(A)(1)(B)(4). (Doc. 13-1, Declaration of Susan Albert, BOP Paralegal Specialist, ("Albert Decl.") ¶¶ 2, 3). Credico's projected release date is March 5, 2019, via good conduct time. (*Id.* at ¶ 3).

On February 1, 2018, staff placed Credico in the SHU pending a Special Investigative Supervisor investigation. (Albert Decl. ¶ 4). On September 28, 2017, staff completed an "Institutional Referral for CCC Placement." (Albert Decl. ¶ 5; Doc. 13-1, p. 4, Institutional Referral for CCC Placement). A placement of 91-120 days was requested. (*Id.*). Credico is currently pending a Residential Re-entry Center date. (Albert Decl. ¶ 6).

A review of Credico's administrative remedies reveals that he filed twenty-nine (29) administrative remedies during his incarceration with the BOP. (Albert Decl. ¶ 7; Doc. 13-1, pp. 19-20, Administrative Remedy Generalized Retrieval). Five of those administrative remedies were filed at FCI-Allenwood and two were filed while Credico was housed in the SHU. (Id.). However, none of the administrative remedies pertain to any of the issues raised in Credico's habeas petition. (Albert Decl. ¶ 8).

On February 23, 2018, while housed in the SHU, Credico filed administrative remedy 932979-F1 regarding a book that was confiscated. (Doc. 13-1, p. 21, Administrative Remedy 932979-F1). This remedy was accepted. (Doc. 13-1, p. 19, Administrative Remedy Generalized Retrieval). On April 5, 2018, while housed in the SHU, Credico filed administrative remedy 932979-R1 at the regional level, requesting the return of his confiscated books. (Doc. 13-1, p. 20, Administrative Remedy Generalized Retrieval). This remedy was rejected because the issue was not sensitive, and Credico was advised that he must wait for a response at the institution before filing an appeal to the Regional Office. (Id.).

There is no record that Credico filed any administrative remedies with respect to the claims in the habeas petition. (See Doc. 13-1, pp. 19-20, Administrative Remedy Generalized Retrieval).

The instant petition was filed on February 26, 2018. (Doc. 1).

## B. The Second Chance Act and BOP Implementing Guidance

On April 9, 2008, the Second Chance Act of 2007, Pub.L. No. 110-199, Title II, § 251, 122 Stat. 657, 697 ("Second Chance Act"), codified at 18 U.S.C. §§ 3621, 3624, went into effect. This Act contains provisions designed to aid prisoners in their transition back into society, and increases the duration of pre-release placement in a RRC from six (6) to twelve (12) months. 18 U.S.C. § 3624(c)(1), (c)(6)(C). The BOP's policies provide that recommendations for RRC placements are ordinarily first reviewed with the inmate and the prisoner's Unit Team approximately seventeen (17) to nineteen (19) months prior to the inmate's probable release date. *Id.* Referrals are made to the Community Corrections Manager, who coordinates the placements. *Id.* Each inmate recommendation and referral is conducted by staff with the understanding that inmates are entitled to a maximum RRC placement of twelve months, but that specific RRC placement recommendations should be based on an individualized assessment of the criteria set forth in 18 U.S.C. § 3621(b), including a particular inmate's needs for services, public safety, and the necessity of the BOP to manage its inmate population responsibly. *Id.* When assessing an inmate for an RRC recommendation, the prison Unit Team must review the resources of the facility contemplated, the nature and circumstances of the inmate's offense, the history and characteristics of the inmate, any statement of the court that imposed the sentence, and any pertinent policy statement issued by the U.S. Sentencing Commission. *Id.* The inmate's

4

institutional conduct and programming are also an important part of this assessment process, and are considered to determine whether additional RRC time is warranted as an incentive for positive behavior by the inmate under 42 U.S.C. § 17541.

In the instant case, Respondent contends that on September 28, 2017, staff completed an Institutional Referral for CCC Placement, and requested a 91-120 day placement. Respondent further contends that placement has not been determined or secured, and Credico is currently pending a Residential Re-entry Center date.

### C. BOP's Grievance Procedures

Regarding an inmate's concern with RRC placement and other institutional matters, the BOP has adopted a three-tiered administrative remedy procedure where an inmate may submit complaints relating to any aspect of his confinement. 28 C.F.R. § 542.10, *et seq.* Generally, an inmate must first present his complaint to staff in an attempt to informally resolve the matter. *Id.* § 542.13(a). If informal resolution is unsuccessful, the inmate may file a formal written complaint to the warden on the appropriate form within twenty (20) calendar days of the date on which the events which form the basis for the complaint took place. *Id.* § 542.14(a). If the inmate is dissatisfied with the warden's response, the inmate may then file an appeal to the Regional Director within twenty (20) calendar days. *Id.* § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may be appealed to the General Counsel's Central Office within thirty (30) calendar

days from the date of the Regional Director's response. *Id.* The Central Office decision is the final level of administrative review. *Id.*

Respondent asserts that in addition to the prematurity of this action, Credico has failed to exhaust any grievances in accordance with the BOP's Program Statement, 28 C.F.R. § 542.10, *et seq.*, related to any claims in the habeas petition. Accordingly, Respondent argues that this case must be dismissed for Credico's failure to properly exhaust his administrative remedies.

## II. Discussion

### A. Exhaustion Doctrine Bars Consideration of Habeas Petition

Credico's habeas petition is procedurally flawed in that he has failed to exhaust his administrative remedies. Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241. *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). However, the

Third Circuit has also "held that the administrative exhaustion requirement in this context may be excused if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served." *Cerverizzo v. Yost*, 380 F. App' x 115, 116 (3d Cir. 2010) (citations omitted).

In the case at bar, Credico admits that he did not exhaust his administrative remedies. (*See* Doc. 14). Credico asks the Court to excuse him from exhausting his administrative remedies and requests that the Court stay this action pending his exhaustion of administrative remedies. (Docs. 16, 29). It is clear that Credico's petition is premature under the standards set forth in *Moscato*.

Credico alleges that an "unknown staff" member informed him that the grievance procedure was unavailable to inmates who were pending SIS investigations and housed in the SHU. (Doc. 1, p. 3). However, it is undisputed that Credico filed two (2) separate administrative remedies while housed in the SHU. (Doc. 13-1, pp. 19-22). Credico admits that he was able to file these two grievances while in the SHU, but claims that he was only permitted to file grievances pertaining to certain issues, and was not able to file grievances pertaining to the specific claims in the instant habeas petition. (Doc. 14, p. 5). However, the uncontroverted record reflects that Credico was able to file administrative remedies while housed in the SHU. The Court thus finds that Credico has failed to establish that the administrative remedy process was unavailable to him.

Furthermore, Credico cannot avoid the exhaustion requirement by simply asserting that he regards the administrative remedy process as futile. When presented with habeas claims seeking placement in a residential setting under the Second Chance Act, courts in the Middle District of Pennsylvania have consistently held that:

> Exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark, which is simply a statutory maximum and not a mandate.

*Ross v. Martinez*, No. 09-1770, 2009 WL 4573686, at *3 (M.D. Pa. Dec. 1, 2009) (citations omitted). As noted by the United States Court of Appeals for the Third Circuit, when examining discretionary prison decisions regarding RRC placement, exhaustion is required before a prisoner may proceed into federal court. *See Vasquez v. Strada*, 684 F.3d 431, 434 (3d Cir. 2012); *see also Bisulca v. Schism*, No. 09-2552, 2010 WL 1805394 (M.D. Pa. May 5, 2010); *McCooey v. Martinez*, No. 09-1533, 2010 WL 411744 (M.D. Pa. Jan. 25, 2010).

Additionally, there is no indication that requiring Credico to properly utilize the administrative review process would cause him irreparable harm. The BOP is not presently holding Credico beyond the term of imprisonment imposed by the United States District Court for the Eastern District of Pennsylvania. His projected release date is March 5, 2019, and he is currently serving his judicially imposed sentence.

Credico also appears to argue that pursuant to *Woodall v. Fed. Bureau of Prisons*,

8

432 F.3d 235 (3d Cir. 2005), exhaustion is not required where an inmate is attacking the constitutionality of a prison policy. In *Woodall*, a federal prisoner challenged the validity of BOP regulations that limited an inmate's placement in a halfway house to the lesser of ten percent of the inmate's total sentence or six months (28 C.F.R. §§ 570.20-21 (2005)). He did not exhaust his administrative remedies, but argued that he was not required to do so because exhaustion would be futile. The district court agreed, stating: "[E]xhaustion of administrative remedies is not required where exhaustion would not promote" the goals of the doctrine. *Woodall v. Federal Bureau of Prisons*, No. 05-1542, 2005 WL 1705777, * 6 (D.N.J. July 20, 2005) (citing *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998) and *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)). The district court concluded:

> Here, it does not appear that there is any need to develop a factual record. Nor does this matter require application of the agency's particular expertise. Woodall does not challenge the application of the BOP's ten-percent rule to him, but challenges whether the ten-percent rule legally implements the statute pursuant to which it was promulgated. This is a question within the expertise of courts [under *Chevron*]. Accordingly, the purposes of the exhaustion requirement would not be served by requiring Woodall to exhaust his administrative remedies.

*Id.* The United States Court of Appeals for the Third Circuit subsequently affirmed the district court's resolution of the issue. *Woodall*, 432 F.3d at 239 n.2. The Third Circuit held that because "the purposes of exhaustion would not be served here by requiring Woodall to exhaust his administrative remedies[,]" he was excused from the requirement. *Id.*

In contrast to *Woodall*, where exhaustion was futile because the court could

9

confidently predict that the petitioner would not receive relief through the administrative process since the BOP was not going to deviate from its regulations, this Court cannot with certainty predict how the BOP's Regional Director and General Counsel's Office would have ruled on the Credico's administrative appeal if he had filed one challenging the application of the BOP policy to him. Therefore, Credico is not excused from exhaustion in this matter.

Because Credico has not exhausted his administrative remedies and has not shown that his failure to do so is excusable, the Court will dismiss the petition without prejudice to the filing of a new § 2241 petition after Credico fully exhausts appropriate administrative relief. To hold otherwise would frustrate the purposes of the exhaustion doctrine by allowing prisoners to invoke the judicial process before completing administrative review.

### B.  Judicial Ripeness Doctrine Precludes Review of Petition

Credico's habeas petition is also procedurally flawed in that his claim is not yet ripe for adjudication because the BOP has not yet made an RRC placement decision in his case. Pursuant to the Second Chance Act, RRC placement is not available to an inmate until the final months of a prison term. The Court cannot address Credico's concerns without the existence of some genuine, currently justiciable case or controversy. *See Curry v. Thomas*, No. 1:cv-14-0756, 2014 WL 4078639, at *2 (M.D. Pa. Aug. 18, 2014.)

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or

controversies." *Simon v. E. Ky.Welfare Rights Org.*, 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Standing provides "justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Three elements comprise the "irreducible constitutional minimum of standing": (1) an "injury in fact"; (2) an injury that is causally connected to the conduct of which the plaintiff complains; and (3) the likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Griffin v. Holt*, No. 3:08-cv-1028, 2008 WL 5348138, at *2 (M.D. Pa. Dec. 17, 2008).

Credico appears to argue that because he was recommended for RRC placement of less than six months, this Court has jurisdiction to review this claim. However, a final RRC placement decision has not yet been made. Therefore, because a final RRC placement decision had not been made at the time Credico filed his habeas petition, the issue was not then ripe, nor is it ripe now. The Third Circuit has addressed this very issue of ripeness in the context of inmate habeas petitions challenging RRC placements and articulated that when "neither a final decision nor a final recommendation [on RRC] has been made . . . [the] habeas corpus petition . . . is not ripe for judicial review." *Porter-Bey v. Bledsoe*, 456 F. App'x 109, 111 (3d Cir. 2012); *see also Stanko v. Obama*, 393 F. App'x 849, 851 (3d Cir. 2010) (finding that because no BOP decision had been made in petitioner's case, any injury

based on the application of the Second Chance Act to him was speculative); *Curry v. Thomas*, No. 1:cv-14-0756, 2014 WL 4078639, at *3 (M.D. Pa. Aug. 18, 2014) (providing that "where an inmate seeks judicial intervention in the RRC placement process before a final placement decision has been made, a habeas petition must be dismissed since the petition is premature and does not present a justiciable case or controversy"). Therefore, Credico's petition will be dismissed as no final agency action has been taken, and this matter is not yet ripe for resolution by the Court.

### C. Second Motion to Supplement

Credico also filed a second motion to supplement, wherein he seeks to amend his habeas petition to add claims related to the loss of good conduct time. (Doc. 22). However, Credico acknowledges that he has failed to exhaust his administrative remedies with respect to this claim, and requests that the Court stay this action while he exhausts this claim. (*Id.* at pp. 8-9).

Furthermore, to the extent that Credico seeks to amend his habeas petition with respect to the loss of good conduct time, this claim is unrelated to the claims in the habeas petition. The rules governing habeas petitions generally require separate petitions addressing separate claims. *See* R. GOVERNING § 2254 CASES R. 2(e) ("A petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court."); *see also* R. GOVERNING § 2254 CASES

1(b) (applicable to petitions under 28 U.S.C. § 2241 in the discretion of the court). Pursuant to Rule 2(e), Credico is obligated to submit a separate habeas petition raising the new claims. He cannot challenge wholly separate and distinct claims in one action. The Court finds that allowing the second supplement would violate the rules governing habeas proceedings and would constitute an abuse of the judicial system. Thus, the second motion to supplement will be denied without prejudice to Credico's right to raise his claims in a separate habeas action.

## III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be dismissed. Petitioner's motions to stay and second motion to supplement will be denied.

A separate Order shall issue.

Date: February ___, 2019

Robert D. Mariani
United States District Judge